Estelle Werderitz, Estelle Werderitz, as Administrator of the Estate of Leonard Werderitz, Deceased; Dorothy Cosentino, et al., Plaintiffs-Appellants, v. Henry Berkhout, Jr., et al., Gold Building Corp., a Corporation, Harper & Sixty-Third Corp., a Corporation, Stony & Sixty-Third Building, Inc., a Corporation, James Cahill, Central National Bank in Chicago, a Corporation, as Trustee Under Trust No. 1003, George J. MacLean, Administrator of the Estate of Albert Schlossberg, Deceased, and Alan G. Schwartz, Defendants-Appellees.

Gen. No. 51,102.

First District, Second Division.

April 11, 1967.

 

Steinberg, Polacek & Steinberg, of Chicago (Bradley D. Steinberg, of counsel), for appellants.

Lord, Bissell & Brook, of Chicago (Harold L. Jacobson and Richard E. Mueller, of counsel), for appellees, Harper & Sixty-Third Corp., and Stony and Sixty-Third Building, Inc.

MR. JUSTICE BURKE delivered the opinion of the court.

The cause of action by plaintiffs who had sustained severe personal injuries and extensive medical expense in a collision of two automobiles, was against various tavern operators and real estate owners under the Dram Shop Act. By the time of trial the only defendants remaining in the lawsuit were Harper & 63rd Corporation and Stony & 63rd Building, Inc., represented by Mr. Harold Jacobson of the law firm of Lord, Bissell and Brook; and Vera Kljajic, Gold Building Corporation, George J. MacLean, Administrator of the Estate of Albert Schlossberg, deceased and Alan G. Schwartz, represented by J. Richard Stanton.

On February 10, 1965, the trial commenced before Judge Charles R. Barrett. Plaintiffs were represented by Messrs. Matthew and Bradley Steinberg. The defendants, Vera Kljajic, Gold Building Corporation, George MacLean, Administrator of the Estate of Albert Schlossberg and Alan G. Schwartz were represented by J. Richard Stanton (hereinafter called the Stanton defendants). The defendants who are appellees, the Harper & 63rd Corporation and the Stony & 63rd Building, Inc., were represented by Harold Jacobson of the law firm of Lord,

142

Bissell & Brook (hereinafter called the Jacobson defendants). Settlement negotiations were conducted before and during the trial. These negotiations at the commencement of the trial resulted in the Jacobson defendants offering to pay $10,000 for a release of their liability. The Stanton defendants offered to pay $10,000 in settlement of their liability. The plaintiffs demanded a total of $25,000. A jury was impaneled and the trial begun. After a mistrial, the selection of a new jury and the beginning of a second trial, the plaintiffs reduced their total demand to $23,000. The Stanton defendants thereupon increased their offer to $12,000.

Harold Jacobson, having no further settlement authority, telephoned a Mr. Walter Remdt, and requested Mr. Remdt to come to Judge Barrett's chambers to discuss settlement. Mr. Remdt came to Judge Barrett's chambers and in the presence of attorneys and the Judge, agreed to pay $11,000 on behalf of the Jacobson defendants. Pursuant to the agreement, Judge Barrett, on February 16, 1965, entered an order dismissing the suit. Each set of defendants sent separate releases, reciting separate consideration and terms. The releases reflected the offer and acceptance made by and between the respective parties. The documents releasing the Jacobson defendants were executed on March 9, 1965, by the plaintiffs Estelle Werderitz, individually and as Administratrix of the Estate of Leonard Werderitz, in consideration of the payment of $7,000, and Dorothy Cosentino and James Cosentino in consideration of the payment of $4,000 and thereafter returned to Harold Jacobson. On March 22, 1965, two checks payable in the amount and manner set forth in the Jacobson releases were forwarded on behalf of the Jacobson defendants to the plaintiffs and their attorneys.

The plaintiffs also executed releases in settlement of their claims against the Stanton defendants and had returned these releases to Mr. Stanton. The consideration

143

called for in the Stanton releases, however, was never paid, because the Lincoln Casualty Company of Springfield, Illinois, the insurer of the defendants represented by Mr. Stanton, became insolvent subsequent to the settlement. Because of the insolvency of the Lincoln Casualty Company and its inability to pay the consideration for the Stanton releases the plaintiffs sought to rescind the settlement agreement with the Jacobson defendants even though these defendants had fully performed their agreement. The settlement checks of $7,000 and $4,000 respectively which had been forwarded to the plaintiffs' attorneys were not cashed. Instead, on April 9, 1965, the plaintiffs filed a petition to set the settlement agreement aside and to reset the cause for trial. After listening to all the evidence and reading the briefs, the court, on August 13, 1965, denied plaintiffs' petition to vacate the order of dismissal as to the Jacobson defendants, but in view of the failure of consideration vacated the dismissal with respect to the Stanton defendants. The court found (Judge Barrett presiding) that the settlement agreements, though negotiated simultaneously, were separate and distinct agreements; that the documents executed by the plaintiffs as to the Jacobson defendants are valid; and that the failure of the Stanton defendants to perform their agreement did not invalidate the executed agreement between the Jacobson defendants and the plaintiffs. In addition, Judge Barrett recognized that because the settlement agreement between the Jacobson defendants and the plaintiffs had been called a release, the Lincoln Casualty Company or the Stanton defendants might, at a subsequent date, contend that the release agreement between the Jacobson defendants and the plaintiffs constituted a full satisfaction of the plaintiffs' claim and therefore barred any further action against the Stanton defendants. In an endeavor to prevent the Stanton defendants from benefiting from

their failure to perform their agreement, Judge Barrett modified the release agreement between the plaintiffs and the Jacobson defendants to show that the agreements were in fact covenants not to sue and to thereby preserve the right of the plaintiffs against the Stanton defendants. The major part of the negotiations took place in Judge Barrett's presence. The plaintiffs appeal.

Appellants maintain that there was an oral contract between the parties which created a binding joint settlement agreement by the terms of which the Jacobson defendants and the other defendants were jointly bound and that plaintiffs having only authorized a single total settlement in the sum of $23,000 in return for dismissal of their action are not bound to any alleged several agreement or agreements producing less than such sum. The Stanton defendants point out that a release or accord and satisfaction extinguishes or discharges the entire cause of action while a covenant not to sue does not affect the cause of action but only the right to sue thereon; that the agreement of all the parties involved a single suit and a settlement for a total amount of $23,000 for which plaintiffs' total cause of action would be discharged; and that a covenant not to sue is only used where the circumstances indicate that the parties intend that the plaintiff preserve a cause of action against other defendants.

The Stanton defendants further assert that assuming that the "releases" are determined to be an agreement between the plaintiffs and the Jacobson defendants, then parol evidence is admissible to prove the existence of the fundamental assumption upon which the releases were based, that the binding effect of the releases was conditional upon each defendant paying its share of the promised commitments and that the true consideration was that each defendants' group was to obtain the benefit of the promise of the other defendants' group so that

the total settlement would be a figure acceptable to the plaintiffs and from which the plaintiffs would each give of the said defendants a complete release. Finally, the appellants argue that the findings of fact made by the trial court in its amended order are contrary to the applicable law and are against the manifest weight of the evidence.

The findings of a trial court will not be disturbed unless against the manifest weight of the evidence or unless the findings are palpably erroneous. The facts for the most part are undisputed. After a mistrial and after the start of the second trial an oral agreement for settlement was entered into on February 16, 1965, pursuant to which the court dismissed the cause. Thereafter the settlement agreements with the plaintiffs were reduced to writing in the form of releases which were submitted to the plaintiffs through their counsel for execution. The agreements were executed by the plaintiffs on March 9, 1965, releasing the Jacobson defendants in consideration of $7,000 to Estelle Werderitz and $4,000 to Dorothy Cosentino and James Cosentino. The settlement consideration set forth in the settlement documents was forwarded to the plaintiffs on March 22, 1965. After the releases were returned it was learned that the Lincoln Casualty Company, the insurer of another tavern (not the tavern of the Jacobson defendants,) had become insolvent and may be unable to pay the consideration set forth in the settlement agreement. As a result of this discovery the plaintiffs endeavored to rescind their settlement agreement with the Jacobson defendants on the basis that the failure of consideration of the settlement with the Stanton defendants rescinds the agreement with the Jacobson defendants.

The trial judge, examined the settlement documents, heard testimony received and read briefs and found that

146

the settlement agreements were separate and distinct agreements and that the failure of the Stanton defendants to perform their separate agreement did not invalidate the agreement between the Jacobson defendants and the plaintiffs. The trial judge was in attendance during the course of the settlement negotiations and had personal knowledge of what transpired before him. It is not disputed that a settlement agreement was entered into by plaintiffs with the Jacobson defendants and that the sole factor which caused the plaintiffs to change their mind in completing the settlement was the fact that the settlement agreement entered into by plaintiffs with the codefendants could not be completed by the insurer of the codefendants.

It is undisputed that the Jacobson defendants originally offered to pay $10,000 to satisfy their liability, if any, to the plaintiffs for the injuries which the plaintiffs sustained and that the Jacobson defendants offered to dispose of the litigation, finally did and were the last parties to agree to pay $11,000 to the plaintiffs for a release of their liability. The Jacobson defendants never agreed to pay the plaintiff $23,000 and did not agree to perform on behalf of the Stanton defendants. The Jacobson defendants have carried out their agreement to pay the plaintiffs $11,000 in release of their liability as shown by both the oral negotiations prior to the trial and by the written settlement documents. The plaintiffs' argument that they had authorized the settlement of their claim upon the payment of $23,000 only, is without merit. The agreement signed by the plaintiffs shows that each knew precisely the amount of consideration to be received. In fact, not one of the plaintiffs was to receive $23,000. This amount was to be divided among each of three plaintiffs and the exact division was specifically recited in the settlement agreements when executed by the plaintiffs. The settlement

agreements recited the intentions of all the contracting parties and were agreed to by all the contracting parties.

We have examined the cases cited by the appellants in support of their position and find them inapplicable to the factual situation presented by the record in the instant case.

As shown by the releases executed by each of the plaintiffs the settlement was not a lump sum settlement for all of the plaintiffs to be paid by all of the defendants. Each of the plaintiffs was to be paid a specific amount by each of the defendants. Estelle Werderitz, individually and as administratrix, was to and did receive $7,000 from the Jacobson defendants. Dorothy and James Cosentino were to and did receive $4,000 from the Jacobson defendants. Not one of the three plaintiffs was to receive $23,000. The only way that the plaintiffs could have been unaware of the amounts which each was to receive from each tavern was to fail to listen at the negotiations and to fail to read the settlement documents. The settlements were obviously authorized by the plaintiffs. The trial court admitted parol evidence of the prior negotiations between the parties which resulted in the settlements and found that the settlement between the plaintiffs and the Jacobson defendants was a separate, valid and binding agreement on all the parties. The question of admissibility of parol evidence is not an issue on this appeal since the trial court admitted all the parol evidence which the appellants sought to introduce.

Answering the contention of plaintiffs that it is inconceivable that they would have settled with the Jacobson defendants alone for the sum of $11,000, the Jacobson defendants say that there is no disclosure as to why such a settlement is inconceivable and point out that originally the plaintiffs filed suit against the driver

and owner of the automobile and against four taverns; that the suit against the driver and owner of the automobile was apparently settled prior to the trial, since it was dismissed on February 2, 1965, and that the disposition of the case against the other taverns is not disclosed. Appellees state that the plaintiffs were apparently willing to settle their claims against the tortfeasor causing their injury, the driver of the automobile, without receipt of the full payment for their injury for which the driver may have been liable and that in view of the credit to which Dram Shop defendants are entitled to receive from payments received by the injured parties from the automobile insurers and the normal risks of trial, it does not appear, nor does the record disclose, why it is inconceivable that the maximum settlement value of plaintiffs' claim against the Jacobson defendants was the sum of $11,000. Any settlement agreement contemplates a release of the defendants paying the consideration from any further liability. The release does not necessarily result in a payment of the full amount of the damage.

The releases executed by the plaintiffs releasing the Jacobson defendants released only the Jacobson defendants and no others from any further liability to the plaintiffs. The releases did not recite that the consideration to be paid constituted the payment of the full amount of damage. Each release specifically recited that the Jacobson defendants denied that they were liable for the injuries and that the settlement amounts were paid in settlement and compromise of all claims without in any way admitting liability for any claim made by the plaintiffs. The Jacobson defendants never agreed to pay more than the $11,000, which they did pay and which the plaintiffs agreed to accept.

The appellees do not argue in support of or against the acts of the trial judge in modifying the release

149

agreements between plaintiffs and the Jacobson defendants to show that the agreements were in fact covenants not to sue.

■ We are of the opinion that the trial judge was right in deciding that the settlement agreement between the Jacobson defendants and the plaintiffs was a separate and distinct agreement binding upon the plaintiffs and that the court's findings are not against the manifest weight of the evidence. Therefore the order of September 29, 1965, denying plaintiffs' petition and supplemental petition to vacate the order of dismissal is affirmed.

Order affirmed.

LYONS, P. J. and BRYANT, J., concur.